# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DELL WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO.: 3:10-cv-377-GPM-DGW |
| | ) |
| DR. SCHICKER and MAGID FAHIM, M.D., | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATIONS

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the question whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections ("IDOC") prior to filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). It is **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. It is **FURTHER RECOMMENDED** that the Motion to Dismiss filed by Defendant Fahim (Doc. 30) and the Motion for Summary Judgment filed by Defendant Schicker (Doc. 48) be **GRANTED,** and the action be **DISMISSED.**

### FINDINGS OF FACT

Plaintiff Dell Williams filed his complaint on May 19, 2010, pursuant to 42 U.S.C. §1983 alleging that Defendants, Illinois Department of Corrections ("IDOC") employees, failed to provide him with adequate medical treatment for a hernia (Doc. 1). Upon threshold review,

Plaintiff was allowed to proceed against all named defendants: Dr. Schicker, Magid Fahim, Ms. Paul, and Tom J. Sestak (Doc. 9). On June 6, 2011, the Court dismissed Defendants Paul and Sestak without prejudice because they had not been served within the deadlines imposed by Fed. R. Civ. P. 4(m) (Doc. 44). Plaintiff now proceeds against Defendants Schicker and Fahim. On March 31, 2011, Dr. Fahim filed a motion to dismiss arguing that Plaintiff failed to properly exhaust his administrative remedies prior to filing this lawsuit (Doc. 30). On July 11, 2011, Dr. Schicker filed a motion for summary judgment also based upon Plaintiff's failure to exhaust (Doc. 48).

*Evidence Submitted by Motion*

Defendants submitted the following documents to the Court relevant to the question of exhaustion of administrative remedies:

1. A grievance dated February 16, 2010, complaining that Defendant Fahim did not provide him with appropriate medical treatment for his hernia. The grievance does not contain a counselor's response. It was received by the IDOC Administrative Review Board ("ARB") on March 8, 2010, but returned to Plaintiff on March 15, 2010, unreviewed. On the Return of Grievance form Gina Allen, chairperson of the ARB, marked that additional information was required. Specifically, she directed Plaintiff to provide a copy of a grievance, including the counselor's response, and a Grievance Officer's Report with a response from the Chief Administrative Officer ("CAO") (Doc. 54-2, pp. 8-10).

2. A grievance dated February 16, 2010, which is a word-for-word copy of Grievance 1. Plaintiff marked this grievance as an emergency. On March 18, 2010, Donald Goetz, the CAO, determined the grievance was not an emergency and directed Plaintiff to

submit it "in the normal manner." The grievance was stamped "received" by the ARB on April 2, 2010 (Doc. 54-2, pp.13-14).

3. A grievance dated February 16, 2010, which is a word-for-word copy of Grievances 1 and 2. On March 4, 2010, Donald Goetz, the CAO, determined the grievance was not an emergency and should be submitted "in the normal manner." The grievance is stamped "received" by the Menard Correctional Center Grievance Office on March 4, 2010 (Doc. 54-2, pp. 18-19).

4. A grievance dated February 16, 2010, which is a word-for-word copy of Grievances 1, 2, and 3. On April 6, 2010, CAO Donald Goetz determined the grievance was an emergency and should be expedited. The grievance was stamped "received" in the Menard Grievance Office on April 15, 2010 (Doc. 54-8). Grievance Officer Jeannette Cowan prepared a Grievance Officer's report on the grievance on April 28, 2010, recommending that the grievance be denied. CAO Donald Goetz concurred on May 3, 2010. On May 13, 2010, Plaintiff Williams signed the report in the section indicating he was appealing the denial of the grievance (Doc. 54-9).[1]

5. A letter dated April 21, 2010, from Plaintiff to Illinois Governor Pat Quinn complaining that Ms. Paul and Dr. Fahim refused to provide him with surgery for his hernia (Doc. 54-2, pp. 16-17). On June 24, 2010, Plaintiff received a letter from Terri Anderson, Manager Office of Inmate Issues at the ARB. Ms. Anderson wrote:

> Your correspondence regarding medical treatment, addressed to Governor Quinn has been referred to this Department for review and response.
>
> On March 8, 2010, the Administrative Review Board received your correspondence regarding your medical concerns. At that time Ms. Allen of the ARB informed you that you needed to include the Grievance Officer's response. Upon receipt of your correctly filed grievance your concerns will be reviewed.

---

[1] The parties presented no evidence showing that Plaintiff forwarded this grievance to the ARB for review.

3

(Doc. 54-2, p. 15).

6. The affidavit of Gina Allen, chairperson of the ARB. Ms. Allen averred that the ARB files did not contain any properly-exhausted grievances (Doc. 48-2).

*Pavey Hearing*

The undersigned held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), on August 30, 2011, to determine whether Plaintiff properly exhausted his administrative remedies before filing suit.

Gina Allen, a chairperson of the ARB testified at the hearing. Ms. Allen testified that the ARB received three grievances or complaints from Plaintiff in 2010 regarding his hernia, but none of the grievances were properly filed, so none were reviewed on the merits. The first grievance, received on March 8, 2010, was returned to Plaintiff as improperly filed because it did not contain a grievance officer's response or the Chief Administrative Officer's signature (Hrg. Trans. Doc. 58, pp. 14, 22). The second grievance, received on April 2, 2010, presented the same issues as the March 8 grievance. Because it was a duplicate, the grievance was not returned to Plaintiff. It was placed in the ARB files (Hrg. Trans. Doc. 58, pp. 17, 22). The third grievance, in the form of a letter to Illinois Governor Pat Quinn, was forwarded to the ARB from Governor Quinn's office. On June 24, 2010, Terri Anderson, Gina Allen's supervisor, wrote a letter to Plaintiff returning the letter directed to Governor Quinn. Ms. Anderson's letter informed Plaintiff that he would have to provide a grievance officer's response for the ARB to review the substantive issues raised in the grievance (Hrg. Trans. Doc. 58, pp. 19, 22-23). Ms. Allen testified that she had thoroughly reviewed the files of the ARB, and found no other grievances from Plaintiff regarding the treatment of his hernia.

In response, Plaintiff argued that he filed the first grievance as an emergency, sent it to the warden, who sent it to the grievance officer. He stated that it was not his fault that he did not

get a counselor's response to the grievance because at the time he was housed in segregation could not get a counselor to take his grievance. Plaintiff argued that he submitted other grievances, but received no responses to them. Plaintiff stated that when he attempted to give a grievance to his counselor, the counselor told Plaintiff that "he didn't want nothing to do with the grievance procedure or he wasn't gonna sign his name on the grievance" (Hrg. Trans. Doc. 58, p. 26). Plaintiff stated that he did not know the name of the counselor who refused to take or sign the grievance. When the Court asked Plaintiff to describe him, Plaintiff stated that he was seven feet tall with a medium build. He weighed about 150 or 160 pounds and had dark hair. The Court asked the Plaintiff to clarify whether he meant that the counselor was seven feet tall, the Plaintiff indicated that yes, the counselor was over a foot taller than he was (Hrg. Trans. Doc. 58, pp. 27-28).

## CONCLUSIONS OF LAW

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting

5

*Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally. If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. ILL. ADMIN. CODE TIT. 20, § 504.810. The grievance officer is required to advise the Chief Administrative Officer ("CAO") at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. ILL. ADMIN. CODE TIT. 20, § 504.830. An inmate may appeal the decision of the CAO in writing within 30 days. ILL. ADMIN. CODE TIT. 20, § 504.850. *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. ILL. ADMIN. CODE TIT. 20 §504.840.

*Availability of Administrative Remedies*

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the

prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

Based upon the evidence presented to the Court by motion and that presented at the *Pavey* hearing, the Court recommends that Plaintiff did not properly exhaust his administrative remedies prior to filing suit.

Although Plaintiff filed a number of grievances regarding his hernia, he failed to fully-exhaust any grievance. He did not properly follow all steps held out by the IDOC for review of grievances. He filed two grievances, dated February 16, 2010, as emergencies and sent them directly to the CAO, who determined neither was an emergency and directed Plaintiff to "submit the grievance in the normal manner." Another grievance Plaintiff sent directly to the ARB, without first seeking responses to his complaints from his counselor, a grievance officer, and the concurrence of the CAO. The CAO determined that a fourth grievance was an emergency, and forwarded it to the Grievance Officer for a report. Plaintiff received the Grievance Officer's Report, in which the CAO concurred, and signed it, indicating he intended to appeal it, but the ARB never received his appeal. Finally, Plaintiff's letter to Governor Quinn was referred to the ARB, who did not review it because it was not properly filed.

The evidence before the Court shows Plaintiff made numerous attempts to resolve his medical issues at the prison level, but he did not satisfactorily follow all the IDOC's procedures, so the ARB never reviewed his grievances. He did not complete the process; his grievances were not fully exhausted. At the *Pavey* hearing the Court asked Plaintiff to explain why he did

not complete the grievance process. Plaintiff first stated that he never received any responses to his grievances. Then he stated that his counselor would not listen to his complaints or take his grievances. The Court asked Plaintiff to identify the counselor who would not take his grievances, Plaintiff could not name him. The Court asked Plaintiff to describe him. The Plaintiff claimed the counselor was a white male with dark hair, approximately seven feet tall, and weighing 150 to 160 pounds.

Plaintiff's testimony is undermined by the evidence presented in the motions and at the hearing. Although Plaintiff stated that he could not fully exhaust his grievances because he did not receive responses to them, records submitted by Defendants show that Plaintiff successfully filed three emergency grievances and a sent a letter of complaint to Governor Quinn. Of the three grievances, one was found to be an emergency by the CAO, and was forwarded directly to the Menard Grievance Office for review. The grievance officer recommended denial of the grievance and the CAO concurred. On May 13, 2010, Plaintiff signed the portion of the Grievance Officer's Report indicating he wished to appeal the denial. Plaintiff had 30 days after the CAO's decision, that is until June 2, 2010, to appeal the denial to the ARB. There is no indication that he sent that form to the ARB. Instead, six days later, on May 19, 2010, Plaintiff filed his lawsuit in this Court. He could have appealed the grievance and properly exhausted his remedies, but he chose not to.

Plaintiff's claim that an unnamed, seven-foot-tall corrections counselor refused to accept his grievances is not credible. The records submitted by Defendants demonstrate that Plaintiff successfully filed a number of grievances at Menard, forwarded a grievance to the ARB, sent a letter to the Governor, and filed the complaint in this lawsuit. The existence of grievances that reached varying stages of the process belies any such assertion.

Therefore, based on the evidence and testimony before the Court, the Court recommends that Plaintiff did not exhaust administrative remedies prior to filing this lawsuit. Accordingly, the action should be dismissed for failure to comply with 42 U.S.C. § 1997e(a).

### CONCLUSION

Based on all the foregoing, it is hereby **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. It is **FURTHER RECOMMENDED** that the Motion to Dismiss filed by Defendant Fahim (Doc. 30) and the Motion for Summary Judgment filed by Defendant Schicker (Doc. 48) be **GRANTED,** and the action be **DISMISSED.**[2]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have fourteen (14) days after the service of this Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: November 4, 2011**

**DONALD G. WILKERSON**
**United States Magistrate Judge**

---

[2] Also pending before the Court is Defendant Fahim's Motion to Dismiss on the basis of Qualified Immunity (Doc. 50). Because the undersigned recommends that the action be dismissed because Plaintiff failed to exhaust his administrative remedies, it is **FURTHER RECOMMENDED** that Defendant Fahim's Motion to Dismiss on the basis of Qualified Immunity be found **MOOT**.